ENVIRO PETROLEUM, INC.

v.

KONDUR PETROLEUM, S.A., Setiawan Djody d/b/a the Setdco Group, Far Eastern Hydrocarbons, Ltd. Bakrie Group, Indra Bakrie, Aburizal Bakrie and Nirwan Bakrie

Civil Action No. G–99–405.

United States District Court,
S.D. Texas,
Galveston Division.

March 29, 2000.

Edward D Vickery, Royston Rayzor Vickery & Williams, Houston, TX, for Ed Vickery.

Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, for Enviro Petroleum, Inc.

Robert J. King, Liddell Sapp et al., Houston, TX, for Setiawan Djody.

Charles W. Cunningham, McKool Smith, Dallas, TX, for Kondur Petroleum, S.A., Setiawan Djody, Far Eastern Hydrocarbons, Ltd., Bakrie Group, Indra Bakrie, Aburizal Bakrie, Nirwan Bakrie.

## ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND STAYING PROCEEDINGS PENDING COMPLETION OF ARBITRATION

KENT, District Judge.

In an Order dated December 20, 1999, the Court indicated to the parties that it considered the arbitration provision of their contract to be the "heart of the case." Moreover, Plaintiff Enviro Petroleum was cautioned that if Article 4 of the contract was a valid arbitration clause, under the Federal Arbitration Act, 9 U.S.C. § 3, this Court *must* issue a stay. After discussing in detail the Court's profound skepticism with regard to Enviro's initial attempts to avoid the arbitration clause, the parties were invited to submit supplemental briefing on this key issue. Having considered the supplemental briefs of the parties, the Court concludes that Article 4 is indeed a valid arbitration clause, and hereby **ORDERS** that **ALL PROCEEDINGS** in this cased be **STAYED** pending resolution of arbitration proceedings. Without considering them in any detail, the respective Motions to Dismiss for Lack of Personal Jurisdiction filed by Defendants Far Eastern Hydrocarbons and Defendants Bakrie Group, Indra Bakrie, Aburizal Bakrie and Nirwan Bakrie are **DENIED**, without prejudice to refiling these motions upon completion of the arbitration proceedings.

### I. The Arbitration Clause

Article 4 of the Contract specifies that "any dispute or disagreement between the parties hereof regarding this Agreement" shall be arbitrated in accordance with the Rules of Arbitration of the International Chamber of Commerce ("ICC Rules"). In its Order of December 20, 1999, the Court discussed in detail the legal framework

governing arbitration clauses and the defects of Enviro's initial attempts to avoid the operation of Article 4 of the Contract. Consequently, in the remarks that follow the Court will focus solely on the new arguments proffered by Enviro in its Supplemental Brief.

## A. Waiver of Arbitration Clause

As the Court previously explained, in light of the fact that Defendants *immediately* moved for a stay of proceedings based on the arbitration clause, it cannot be said that Defendants waived their right to arbitrate by "substantially invoking" the judicial process. *See Miller Brewing Co. v. Fort Worth Distrib.*, 781 F.2d 494, 497 (5th Cir.1986)("Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party"); *Walker v. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir.1991)(holding that "[p]re-suit activity does not invoke the judicial process and cannot support a finding of waiver").

In its Supplemental Brief, Enviro now concedes that Defendants have not waived their right to arbitrate by substantially invoking the judicial process. Instead, Enviro argues that certain actions taken by the Defendants or their putative agents prior to the commencement of this suit amount to an express waiver of the right to arbitrate. The Court is unpersuaded by Enviro's creative argument.

■ "There is a strong presumption against waiver of arbitration." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir.1999); *see also Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1164 (5th Cir.1987)("Waiver of arbitration is not a favored finding and there is a presumption against it"). The strong presumption against a finding of waiver applies regardless of whether the purported waiver is characterized as implied or express. Thus Enviro's current attempt to characterize the purported waiver as an intentional, express waiver

does not change the fact that Enviro must shoulder a heavy burden in persuading the Court that a waiver has in fact occurred.

Plaintiff fails to offer any Fifth Circuit authority which supports its position that Defendants' conduct amounts to an express waiver of the right to arbitrate. Indeed, the case that Plaintiff characterizes as the one *best* stating its position is a 1942 case from the Second Circuit. *See Kulukundis Shipping Co., S.A. v. Amtorg Trading Corp.*, 126 F.2d 978, 989 (2nd Cir. 1942). The language in *Kulukundis* upon which Plaintiff relies is quite obviously pure dicta. Moreover, even if this language had some precedential value, it is as a linguistic matter deeply ambiguous, and likely does not even mean what Plaintiff takes it to mean.

■ It is not difficult to explain the dearth of cases supporting Plaintiff's position that Defendants' reticence to engage in arbitration—prior to the initiation of any formal proceedings—amounts to an express waiver of a contractual right to arbitrate. It is, after all, the duty of the complaining party, here Enviro, to either initiate a lawsuit or commence arbitration proceedings if it is dissatisfied with the conduct of the other party to the contract. Absent contractual provisions to the contrary, the non-complaining party has no duty, under the Rules of Arbitration of the International Chamber of Commerce ("ICC Rules"), to initiate, assist or finance claims against itself. Obviously, the most rational course of action for the non-complaining party to take when initially confronted by a dissatisfied claimant is to do nothing and hope that the complaining party is simply "blowing off steam" and will never actually initiate a lawsuit or commence arbitration proceedings. *See Tenneco Resins, Inc. v. Davy Int'l A.G.*, 770 F.2d 416, 419 (5th Cir.1985)("[r]equiring pre-suit demand will place on the party sought to be charged the duty to institute proceedings which may establish his own liability, though if he remains inactive the

claims asserted against him may never be formally pressed in either arbitration or court proceedings")(quoting *General Guaranty Ins. Co. v. New Orleans Gen. Agency,* 427 F.2d 924, 928 (5th Cir.1970)); *accord In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 574 (Tex.1999), *In re Bruce Terminix Co.,* 988 S.W.2d 702, 705 (Tex. 1998).

This would be a different case if Enviro had actually bothered to initiate arbitration proceedings and Defendants had failed to appear at those proceedings, caused great delay, or otherwise frustrated arbitration in bad faith. If a lawsuit were subsequently instituted, the Court would indeed be inclined to look unfavorably upon a request by Defendants to stay the suit in order to let the arbitration proceed. If sufficiently severe, such conduct on the part of Defendants *after* the commencement of formal proceedings might well amount to an express waiver of their contractual right to arbitrate. But this case involves *pre-commencement* conduct on the part of Defendants which, even when regarded in the light most favorable to Enviro, amounts to nothing more than bluster or an attempt to "stare down" Enviro in the hopes that Enviro will simply give up. In light of the strong presumption against finding a waiver of a contractual right to arbitrate, Defendants' pre-commencement conduct hardly amounts to a express waiver of their rights under Article 4 of the Contract.

### B. *Fraudulent Inducement*

In its Order of December 20, 1999, the Court expressed its profound skepticism that Defendants' conduct in negotiating the Contract somehow amounted to fraud in the omission and thereby vitiated the arbitration clause. In its Supplement Brief, Enviro now concedes that Defendants' conduct "cannot support a claim of fraudulent inducement under current case-law."

Enviro currently argues that it was fraudulently induced to agree to the inclusion of the arbitration clause by Defendants' false representation that the financing was in hand and would be immediately forthcoming if only Enviro would sign the contract. Unfortunately, there is simply no record evidence to support Enviro's claim that Defendants in any way represented that funding was on hand and would be immediately forthcoming if Enviro agreed to the Contract. In fact, the affidavits of Paul Vickery and Roger Sahni are inconsistent with Enviro's latest characterization of the contract negotiations. Both affidavits indicate that Defendants at all times *insisted* on the arbitration clause, and that the clause was a necessary condition for the formation of any contract. Both affidavits indicate that Enviro eventually agreed to the arbitration clause, having concluded that otherwise no contract would be executed. This evidence simply does not support Enviro's claim that it was "induced" into agreeing to the arbitration provision by the promise that financing would be immediately forthcoming.

Even if Enviro had produced some evidence suggesting that assent to the *contract* was procured by misrepresentations of immediate financing, that would still not suffice to preclude arbitration of Enviro's claims. In order for this Court to assess the validity of Enviro's claims of fraudulent misrepresentation, Enviro must show that the arbitration clause *itself,* as opposed to the contract as a whole, was induced by fraud. *See Prima Paint Corp. v. Flood and Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); *R.M. Rerez & Assoc., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992); *Gutierrez v. Academy Corp.,* 967 F.Supp. 945, 946–47 (S.D.Tex.1997)(Kent, J.). If Enviro's evidence merely showed that the contract as a whole was induced by fraud, the resolution of the fraud claims would be the job for an arbitrator, not this Court. *See Welch,* 960 F.2d at 538; *Gutierrez,* 967 F.Supp. at 946–47. Enviro presents no evidence that the contract as a whole was

fraudulently induced by misrepresentations concerning immediate financing, and certainly has not produced the more specific evidence that the arbitration clause *in particular* was induced by false promises of immediate financing.

## C. Public Policy

Finally, Enviro attempts to evade the arbitration provision with a tenebrous argument that Article 4 of the Contract is somehow void as contrary to public policy. Enviro originally claimed that the provisions of Article 4 were "unconscionable." In its earlier Order, the Court noted that to make out a case of unconscionability, Enviro must demonstrate *both* procedural and substantive unconscionability. *See Arkwright–Boston Mfgr's Mutual Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir.1988). The Court pointed out that, by its own admission, Enviro is a major Houston based business with enough savvy and sophistication to broker a multi-million dollar oil refinery project in the Republic of Kazakhstan. Moreover, the Court noted that in response to a question about the arbitration provision prior to the execution of the contract, Enviro's chairman, Roger Shani, wrote "Switzerland arbitration ok, but this is not a major point." In light of such written comments by a highly sophisticated businessman, the Court was hard-pressed to understand how Enviro proposed to make out a case of procedural unconscionability. Apparently, Enviro now agrees that it cannot possibly make out a case of procedural unconscionability, and has responded by recycling its argument under the more generic label of "public policy."

Plaintiff seems to forget that there is a strong public policy in *favor* of enforcing contractual arbitration provisions, especially where, as here, they involve international commercial disputes between sophisticated business concerns. Enviro's "serious concerns" about the arbitration provision hardly rise to the level which would allow this Court to set aside an arbitration agreement on public policy grounds. Enviro's "serious concerns" are either nonsensical on their face, or else they betray a serious factual misunderstanding about the nature of arbitration under the ICC Rules.

Enviro is seeking to avoid arbitration in order to have an opportunity to obtain a judgment from this Court. One of the reasons Enviro gives for setting aside the arbitration provision on vague public policy grounds is that, according to Enviro, any arbitral award would be "unenforceable in Indonesia." Even if the Court were to assume the truth of this doubtful proposition, it does not support Enviro's position that a judgment is so clearly preferable under the circumstances as to make an arbitration provision void on public policy grounds. This is because Enviro, perhaps unwittingly, concedes that "a judgment would have little chance of enforceability in Indonesia, Malaysia, or the former soviet republics—which is where the majority of Defendants' assets lie." Thus by Enviro's own admission, collection attempts will be aimed at Defendants' U.S. assets, and this will be true whether a judgment or an arbitral award is obtained. Certainly a judgment and an arbitral award are on equal footing with respect to enforceability against U.S. assets. Given these considerations, the alleged unenforceability of an arbitral award in Indonesia is hardly a reason to set aside Article 4 on public policy grounds.

As the Court noted in its prior Order, "It is absolutely preposterous for [Enviro] to complain that it cannot afford to arbitrate a dispute related to one of its multi-million dollar business contracts." According to ICC rules, Plaintiff need only pay a modest initial filing fee of $2500 in order to commence arbitration. *See* International Chamber of Commerce Rules of Arbitration, app. III, art. 1.1. Although additional fees are assessed later in the process, the arbitrator has discretion to "fix the costs of the arbitration and decide

which of the parties shall bear them or in what proportion they shall be borne by the parties." *See id.* at art. 31.3.

More fundamentally, even if it were true that it would be considerably more expensive for Enviro to pursue arbitration rather than litigation in a convenient U.S. forum, that is nevertheless what Enviro agreed to do in the Contract. Enviro might have contracted to have Defendants pay the initial and interim costs of arbitration, but did not do so. For that matter, Enviro seems to forget that the arbitration clause, by precluding Defendants from bringing suit in a distant and unfamiliar Indonesian forum, could well have worked to reduce Enviro's litigation expenses. The Court is wholly unpersuaded that the alleged "cost prohibitive" nature of arbitration justifies voiding Article 4 on grounds of public policy.

■ Finally, Enviro argues that because one of the individual Defendants is the chairman of ICC Indonesia, somehow improper influence will be brought to bear on the arbitrators selected to hear this case, and thus Enviro will not "get a fair shake in Swiss arbitration." Enviro simply ignores the multiplicity of procedural safeguards built into the ICC rules designed to avoid the possibility of such rank bias and unfair procedures.

It is the International Court of Arbitration, not ICC Indonesia, which selects the arbitrator. *See id.* at art. 9.3. Although it is a remote theoretical possibility that ICC Indonesia would be asked to nominate the arbitrator, that possibility is highly unlikely because the ICC Court is bound to request nominations from a national committee it considers "appropriate." *See id.* In light of one of the Defendant's ties with ICC Indonesia, the ICC Court is unlikely to consider ICC Indonesia "appropriate" in this case. Moreover, Defendants are willing to stipulate that neither the United States nor the Indonesian ICC National committees would be appropriate in this case.

Enviro is oblivious to other procedural safeguards as well. The ICC Rules require that "[e]very arbitrator must be and remain independent of the parties involved in the arbitration." *See id.* at art. 7.1. The Rules require that the arbitrator be of a different nationality than any of the parties. *See id.* at art. 9.5. A mechanism is provided for a party fearing bias to make written challenges to the selection of an arbitrator. *See id.* at art. 11.1. In short, it would be the height of arrogance for this Court to assume that the rules and procedures of the ICC governing international arbitration are incapable of giving Enviro a "fair shake" and that only this Court can provide an impartial and neutral forum.

The Court concludes that Article 4 is a valid arbitration provision, and that Defendants are not "in default in proceeding with such arbitration." Consequently, pursuant to the provisions of § 3 of the Federal Arbitration Act, 9 U.S.C. § 3, the Court **ORDERS** that **ALL PROCEEDINGS** in this action be **STAYED** until such arbitration has been had in accordance with the terms of Article 4 of the Contract. The Court **DENIES** Defendants' Motions to Compel Arbitration made pursuant to § 4 of the Federal Arbitration Act, leaving it up to the parties to decide the proper location and timing for the arbitration proceedings. However, as was previously explained, it is the duty of Plaintiff to initiate the arbitration proceedings if it wishes to further prosecute its claims against Defendants.

## II. Personal Jurisdiction

In its Order of December 20, 1999, the Court found that it had personal jurisdiction over Defendants Setiawan Djody, d/b/a Setdco Group and Kondur Petroleum. The Court declined to rule on the existence of personal jurisdiction over Far Eastern Hydrocarbons. On December 28, 1999 Defendants Bakrie Group, Indra Bakrie, Aburizal Bakrie, and Nirwan Bakrie also moved to dismiss for lack of personal jurisdiction. The Court has concluded that these proceedings should be stayed pending completion of the arbitration proceedings, and consequently declines to ad-

dress in any detail the various Motions to Dismiss for Lack of Personal Jurisdiction. *See Audio Visual Mart, Inc. v. Telesensory Corp.*, No. Civ. A. 96–2243, 1996 WL 495151 at \*4 (E.D.La. Aug.29, 1996)(granting stay of proceedings without reaching alternative motions to dismiss for lack of personal jurisdiction); *Tyrell–Lopez Inc. v. Health Force, Inc.*, No. 94–C–1450, 1994 WL 258908 at \*1, (N.D.Ill. June 8, 1994)(granting stay and denying motions to dismiss for lack of personal jurisdiction without prejudice to refiling motions upon completion of arbitration); *Saluck v. Rosner*, No. Civ. A 98–CV–5718, 1999 WL 46620 at \*1 (E.D.Pa. Jan.6, 1999)(granting stay while denying motion to dismiss for want of personal jurisdiction). Consequently, the Court **DENIES** the respective Motions to Dismiss for Lack of Personal Jurisdiction, without prejudice to Defendants' right to renew these motions upon completion of the arbitration proceedings.

### III.  Conclusion

Because Article 4 of the Contract is a valid arbitration provision, and Plaintiff has failed to show that Defendants are in default with such arbitration proceedings, the Court **ORDERS** that **ALL PROCEEDINGS** in this action be **STAYED** pending completion of arbitration. Defendants' Motions to Dismiss for Lack of Personal Jurisdiction are **DENIED**, without prejudice to renewing the same upon completion of arbitration. The parties are **ORDERED** to file no further motions with respect to these issues, including motions to reconsider and the like. An order staying judicial proceedings in favor of arbitration is an unappealable interlocutory order. *See* 9 U.S.C. § 16(b)(1); *Ilva (USA) v. Alexander's Daring M/V*, 10 F.3d 255, 256 (5th Cir.1993); *Jolley v. Paine Webber Jackson & Curtis*, 867 F.2d 891, 891 (5th Cir.1989).

**IT IS SO ORDERED.**