*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0416P (6th Cir.)
File Name: 03a0416p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HIGHLANDS WELLMONT
HEALTH NETWORK, INC.;
WELLMONT HEALTH
SYSTEMS, INC., doing
business as Wellmont Bristol
Regional Medical Center,
doing business as Wellmont
Holston Valley Medical
Center,
    *Plaintiffs-Appellees,*

    *v.*

JOHN DEERE HEALTH PLAN,
INC.,
    *Defendant-Appellant.*

No. 02-6078

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 02-00032—Thomas G. Hull, District Court.

Submitted: September 17, 2003

Decided and Filed: November 25, 2003

Before: GUY, and GILMAN, Circuit Judges; REEVES,
District Judge.*

---

## COUNSEL

**ON BRIEF:** James S. Chase, HUNTON & WILLIAMS,
Knoxville, Tennessee, for Appellant. William C. Bovender,
Jimmie C. Miller, HUNTER, SMITH & DAVIS, Kingsport,
Tennessee, for Appellees.

---

## OPINION

---

RALPH B. GUY, JR., Circuit Judge. Defendant, John
Deere Health Plan, Inc. (JDHP), appeals from the denial of its
motion under the Federal Arbitration Act (FAA), 9 U.S.C.
§ 4, to compel arbitration of the claims asserted by plaintiffs,
Highlands Wellmont Health Network, Inc. and Wellmont
Health System (collectively "Wellmont"). JDHP argues that
the district court erred in finding that JDHP had waived its
rights under the arbitration clause in the parties' medical
services agreement. After review of the record, the applicable
law, and the arguments presented on appeal, we reverse.

### I.

JDHP is a qualified health maintenance organization.
Wellmont Health Systems owns and operates the Bristol
Regional Medical Center and Wellmont Holston Valley
Medical Center in East Tennessee. Each of these hospitals is
a member of the Highland Wellmont Health Network, Inc.

---

*The Honorable Danny C. Reeves, United States District Judge for
the Eastern District of Kentucky, sitting by designation.

In 1997, Wellmont and JDHP entered into a medical services agreement (1997 Contract) under which Wellmont provided medical services to JDHP members. The 1997 Contract did not contain an arbitration clause. It had an initial term of two years and automatically renewed annually thereafter.

In early 2001, the parties entered into a second contract (2001 Contract) that contained the following arbitration clause:

## 29.  DISPUTE RESOLUTION

Contracting Hospital agrees that any dispute arising out of this Agreement shall be resolved in accordance with JDHP's written policies and procedures for dispute resolution, which include mandatory, binding arbitration. The parties waive their right to seek remedies in court, including their right to jury trial.  If policies and procedures are inconsistent with this provision, then this provision shall prevail.

Arbitration in regard to benefit determination, utilization, and quality of care matters shall be conducted in accordance with the Employee Benefit Plans Claims Arbitration Rules of the American Arbitration Association.  Arbitration in regard to all other matters arising out of this Agreement including, but not limited to, credentialing/recredentialing, participation, and termination, including termination for quality of care concerns, shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

With respect to benefit determination, which includes but is not limited to authorization of coverage for medical services and the determination of availability and extent of coverage for services provided to a particular Member,

the question for the arbitrator will be whether the decision being arbitrated should be set aside because the decision was arbitrary and capricious.

Each party will bear its own costs and attorney fees. The expenses associated with the arbitration will be shared equally by both parties.  Arbitration shall be final and binding on all parties.

The arbitrator shall have no authority to award exemplary or punitive damages, and the parties waive their right to such damages.

Judgment upon the decision of the arbitrator may be entered in any court having jurisdiction, and the court may enforce the decision of the arbitrator.

The 2001 Contract "superceded" the 1997 Contract "to the extent [it applied] to inpatient and outpatient hospital services."  All other terms and conditions of the 1997 Contract remained in full force and effect. The 2001 Contract was signed by Wellmont on January 24, 2001, and by JDHP on February 27, 2001.  The term of the 2001 Contract for Medicare + Choice Product (which includes the services subject to the billing dispute in this case) was made retroactive to October 23, 2000 through December 31, 2003.

In November 2000, prior to the signing of the 2001 Contract, JDHP conducted an audit of Wellmont's billings under the 1997 Contract.  JDHP determined that Wellmont had billed rehabilitation services under the rate code called DRG 462, which JDHP believed was inappropriate because, among other things, the rehabilitation services were provided in a hospital skilled nursing unit rather than in a licensed

rehabilitation facility as required under the Medicare regulations.[1]

Wellmont did not learn that JDHP objected to the rehabilitation services billings until Wellmont was contacted by the FBI on March 9, 2001—after the 2001 Contract was signed. The FBI was investigating allegations made by JDHP to the Office of the Inspector General of the Department of Health and Human Services regarding Wellmont's billing practices. Also on March 9, 2001, JDHP informed Wellmont that it was seeking in excess of $1 million for the alleged overpayments for rehabilitation services, and that after March 2001 JDHP would prospectively reimburse Wellmont at a lower rate applicable to a skilled nursing facility (SNF) for the rehabilitation services performed in Wellmont's skilled nursing units.

On April 13, 2001, Wellmont sent a letter to JDHP regarding the alleged overpayments for rehabilitation services. The letter cited section 12.b of the 1997 Contract in outlining Wellmont's position on the billing dispute. The letter concluded with the following:

> Finally, we would like to set a date to discuss alternatives for dispute resolution. As I mentioned, Wellmont would be open to discussion of a range of options, including mediation, possible arbitration, or a possible declaratory judgment action before the Federal court. After we have received your analysis and you have had a chance to review our enclosed documentation, we will be in a better position to have that discussion.

Several months later, on July 13, 2001, JDHP sent a letter to Wellmont referencing both the disputed overpayments and the intervening disputed underpayments.[2] With respect to Wellmont's proposed resolution methods, JDHP stated:

> For the reasons stated above, we cannot agree with the assertions made in your May 23 letter that underpayments have occurred. On the contrary, John Deere Health maintains its position that the services were billed inappropriately, resulting in overpayment on John Deere Health's part.

> While we appreciate Wellmont's interest in resolving what Wellmont wishes to portray as a contract dispute quietly and expeditiously, we do not at this point agree to arbitration or other alternative dispute resolution. Rather, John Deere Health reiterates its demand for full payment of all amounts overpaid, totaling in excess of $1.3 million before upward adjustment for interest and previously returned withhold.

> We also expect that Wellmont [sic] take immediate steps to correct its billing practice to avoid future overpayments.

On February 8, 2002, Wellmont filed a complaint in this action asking for a declaration that it was entitled to reimbursement under the higher DRG 462 rate and asking for damages equal to the difference between the DRG 462 and the SNF rates for rehabilitation services provided after March 2001. The complaint referenced and attached only the 1997 Contract.

---

[1] The reimbursement schedules under both the 1997 Contract and the 2001 Contract reference DRG code which is a standardized coding system used for billing and reimbursement within the health care industry.

[2] The July 13 JDHP letter references a May 23 letter from Wellmont, which is not part of the record.

After JDHP informed Wellmont that its claims were governed by the 2001 contract, Wellmont filed an amended complaint.  The amended complaint alleged that JDHP fraudulently induced Wellmont to enter into the 2001 Contract.  Wellmont also asked for damages for JDHP's alleged breach of the implied duty of good faith and fair dealing in negotiating the 2001 Contract and for JDHP's alleged breach of the 2001 Contract in paying the lower SNF rate for the rehabilitation services.

JDHP immediately filed a motion to compel arbitration and stay proceedings.  On August 7, 2002, the district court denied the motion.  It found that the 2001 Contract contained a binding arbitration clause but concluded that JDHP had waived its right to compel arbitration in the July 13, 2001 letter.  This appeal followed.

## II.

The FAA provides that arbitration clauses in commercial contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  If a court determines that a claim is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3.

When faced with a motion to compel arbitration, a district court must follow the procedure set forth in section 4 of the FAA:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be

> in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

It is well established that any doubts regarding arbitrability must be resolved in favor of arbitration.  *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).  We review a district court's ruling on a motion to compel arbitration *de novo*.  *Great Earth Cos. v. Simons*, 288 F.3d 878, 888 (6th Cir. 2002).

### A.  Waiver

An agreement to arbitration may be "waived by the actions of a party which are completely inconsistent with any reliance thereon."  *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (quoting *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973)).  There is a strong presumption in favor of arbitration under the FAA.  *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003).  Because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred.  *Id.*

JDHP argues that it could not have waived its right to invoke arbitration in the July 2001 letter because Wellmont did not raise the fraudulent inducement or bad faith claims, or assert other claims under the 2001 Contract, until it filed its amended complaint in 2002.  JDHP also argues that the July 2001 letter applied only to claims under the 1997 Contract; and thus, there could be no waiver of arbitration under the 2001 Contract.

Wellmont argues that JDHP waived its right to invoke arbitration because the July 2001 letter (1) made no distinction between disputed overpayments under the 1997 Contract  and  disputed  underpayments  under  the  2001

Contract; and (2) categorically denied arbitration without referring to either contract.

The July 2001 letter clearly declined alternative dispute resolution of JDHP's claim for the overpayments made under the 1997 Contract. It also, however, referenced Wellmont's claim for underpayments. JDHP did not start reimbursing at the lower SNF rate until March 2001, after the 2001 Contract was signed and became effective. Thus, in the July 2001 letter, JDHP was declining to engage in alternative dispute resolution of claims made under both the 1997 and the 2001 Contracts.

When JDHP sent the letter in July 2001, the parties were in a discussion stage about their respective claims and their positions on the proper billing code for rehabilitation services. JDHP made the decision to stand firm on its position. It declined "at [that] point" to agree to arbitration or other alternative dispute resolution. When faced with the growing underpayments under the 2001 Contract and JDHP's decision to stand firm on its position, Wellmont had the choice of either initiating a lawsuit or commencing arbitration proceedings. If JDHP had not immediately invoked the arbitration clause upon the commencement of litigation, or if JDHP had frustrated the arbitration process upon commencement by Wellmont, Wellmont may have had a better argument for waiver. Indeed, most arbitration waiver cases involve these types of scenarios. *See, e.g., Gen. Star Nat'l Ins. Co.*, 289 F.3d at 438. But that is not what happened in this case. JDHP's July 2001 letter was sent during pre-commencement negotiations. It really amounts to nothing more than the typical posturing that may occur where one party is attempting to "stare down" the other party in the hope that the other party will simply give up. *See Enviro Petroleum Inc. v. Kondur Petroleum*, 91 F. Supp.2d 1031, 1033-34 (S.D. Tex. 2000).

More importantly, JDHP was responding to a suggestion for alternative dispute resolution made by Wellmont in its April 2001 letter.[3] That letter did not reference the 2001 Contract even though at that point the 2001 Contract was in effect, and Wellmont had been informed that beginning in March JDHP would pay for rehabilitation services at the lower SNF rate. Instead, Wellmont's letter referenced only the 1997 Contract, which did not contain arbitration language, and suggested different means of alternative dispute resolution, only one of which was arbitration. Wellmont offered no evidence that it ever attempted to invoke, let alone suggest, arbitration under the 2001 Contract. Thus, there is no evidence that JDHP expressly waived arbitration under the 2001 Contract. Given the strong preference in favor of arbitration and against waiver, we cannot infer a waiver of arbitration under the 2001 Contract based solely on the parties' conduct at this stage of their dispute.

## B.    Applicability of Arbitration Clause

Wellmont argues that we should affirm the denial of the motion to compel arbitration because the arbitration provision in the 2001 Contract is "repugnant" and should be disregarded. Wellmont points to that portion of paragraph 1 of the 2001 Contract stating that all other terms and provisions of the 1997 Contract continue in full force and effect. It argues that because the 1997 Contract did not contain an arbitration clause, while the 2001 Contract did, there is a conflict over dispute resolution mechanisms, and under Tennessee law, the first method, *i.e.*, no alternative dispute resolution, should prevail. *See Bartlett v. Philip-Carey Mfg. Co.*, 392 S.W.2d 325, 327 (Tenn. 1965) (if two clauses of a contract are so repugnant to each other that they

---

[3] We focus on the April letter, because Wellmont itself argues that JDHP was responding to its suggestion for alternative dispute resolution contained in its April 2001 letter.

cannot stand together, the first shall be received and the latter rejected).

The fatal flaw in Wellmont's reasoning is that the 1997 Contract did not remain in full force and effect with respect to hospital services. Paragraph 1 of the 2001 Contract states in pertinent part:

This Agreement supersedes the contracts, HNHPHO 98/12 KPMP98 961, and HNH POA/PHO 12/96 COPYRIGHT 1996 KPMP96 446, to the extent these contracts apply to inpatient and outpatient hospital services. All other terms and conditions of those contracts and any amendments remain in full force and effect.

Contract KPMP96 446 is the 1997 Contract. The rehabilitation services are hospital services. They are provided in the skilled nursing units of the Wellmont hospitals. Thus, the 2001 Contract, including the section requiring arbitration, completely supercedes the 1997 Contract for those services. There can, therefore, be no repugnancy and the arbitration clause is part of the contract applying to hospital services.[4]

## C. Fraudulent Inducement

Wellmont argues that if we remand this case, the district court should be allowed to adjudicate whether the arbitration clause was fraudulently induced. The Supreme Court has held that a "claim of fraud in the inducement of the entire contract" is a matter to be resolved by the arbitrators, not the federal courts. *Prima Paint Corp. v. Flood & Conklin Mfg.*

---

[4]Moreover, complete silence regarding alternative dispute resolution does not conflict with a clause requiring arbitration. Therefore, even if portions of the 1997 Contract were applicable to hospital services, we would not find that there was a repugnancy.

*Co.*, 388 U.S. 395, 402-04 (1967). However, if there was a fraud that "goes to the 'making' of the agreement to arbitrate," then a federal court may adjudicate:

Under § 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue." Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. . . . We hold, therefore, that in passing upon a [section] 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Id.* at 403-04 (footnotes omitted). *See also Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 933 (6th Cir.1998) (once a court determines that the agreement to arbitrate has not been fraudulently induced, all other issues falling within that agreement are to be sent to arbitration).

Wellmont claims that, when read as a whole, the allegations in the amended complaint show that not only was Wellmont fraudulently induced to enter into the 2001 Contract, but also that the arbitration provision itself was the product of fraudulent inducement. It argues that the allegations support a finding that JDHP inserted the arbitration clause knowing that a major controversy was about to surface of which Wellmont had no knowledge when it executed the 2001 Contract.

We have, however, held that in order to void an arbitration clause, the complaint must contain a "'well-founded claim of fraud in the inducement of the arbitration clause itself,

*standing apart from the whole agreement*, that would provide grounds for the revocation of the agreement to arbitrate.'" *Fazio*, 340 F.3d at 394 (quoting *Arnold v. Arnold Corp.—Printed Communications For Bus.*, 920 F.2d 1269, 1278 (6th Cir. 1990)). Allegations of fraudulent schemes are not sufficient to overcome the strong federal policy in favor of arbitration. The central question is whether the plaintiff's claim of fraud as stated in the complaint relates to the making of the arbitration agreement itself. *Fazio*, 340 F.3d at 394.

The amended complaint in this case alleges that JDHP "fraudulently induced Wellmont to enter into the 2001 contract by fraudulently concealing that [JDHP] disagreed with the manner in which Wellmont was billing for rehabilitation services and for failing to disclose that [JDHP] had reported Wellmont to the federal investigative agencies for allegedly fraudulent billing practices." Wellmont further alleges that "[b]ut for said fraudulent concealment, Wellmont would not have been induced to execute the 2001 contract and continue its contractual relationship" with JDHP. The amended complaint states that the 2001 Contract was entered into as a result of fraud because JDHP signed the contract after it had identified the dispute and wrongfully reported it to the FBI. Wellmont alleges that JDHP fraudulently induced Wellmont to sign the 2001 Contract by not disclosing that JDHP would not continue to pay the higher rate for rehabilitation services. For relief, Wellmont asks that the district court declare the 2001 Contract void.

There are no separate allegations in the amended complaint that JDHP fraudulently induced Wellmont to agree to an arbitration clause. The alleged fraudulent scheme in this case relates to the contract as a whole. Such a claim must be brought before the arbitrator and not the district court in deciding a motion to arbitrate. *Fazio*, 340 F.3d at 395.

### D. Scope of the Arbitration Agreement

Wellmont finally maintains that its fraudulent inducement claim does not fall within the scope of the arbitration clause in the 2001 Contract, which requires arbitration of matters "arising out of this Agreement." Wellmont argues that this clause is narrower than a clause requiring arbitration of matters "relating to" the contract, and that its fraudulent inducement claim "relates to" but does not "arise out of" the 2001 Contract.

District courts have the authority to decide whether an issue is within the scope of an arbitration agreement. *Fazio*, 340 F.3d at 395. "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue." *Id.* If it could, then it may fall outside the scope of the arbitration agreement.

When a contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986). Where the arbitration clause is broad, only an express provision excluding a specific dispute, or "the most forceful evidence of a purpose to exclude the claim from arbitration," will remove the dispute from consideration by the arbitrators. *Id.*

In an early case, the Second Circuit stated that the phrase "'any dispute or difference [arising] under this Charter'" was not broad enough to reach a claim of fraudulent inducement.

*In re Kinoshita & Co.*, 287 F.2d 951, 952 (2d Cir. 1961).[5] The court held that this phrase applied only to claims relating to the interpretation or performance of the contract. While *Kinoshita* has not been formally overruled, the Second Circuit has severely limited its application to its precise facts, *i.e.*, to the phrase "arising under." *See ACE Capital Re Overseas Ltd. v. Cent. United Life*, 307 F.3d 24, 33-34 (2d Cir. 2002) ("any right of action hereunder" is broad enough to include claim of fraudulent inducement of contract); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 -26 (2d Cir. 2001) (the distinction between "arising from" and *Kinoshita*'s language of "arising under" is more than just a semantic one, and only the latter phrase limits arbitration to a literal interpretation or performance of the contract); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 854 (2d Cir. 1987) ("all claims . . . *of whatever nature* arising under this contract" was broad enough to reach claim of fraud in the inducement); *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984) ("any *question* or dispute aris[ing] or *occur[ring]* under" the agreement was sufficiently broad to reach fraudulent inducement claim). The Second Circuit itself has recognized that the authority of *Kinoshita*, therefore, is highly questionable even in the Second Circuit. *ACE Capital*, 307 F.3d at 33.

Other circuits have declined to follow *Kinoshita* because of the strong federal policy in favor of arbitration. *See Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000) ("arising under" and "arising out of" are given broad construction and encompass claims going to the formation of the underlying agreement); *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382,

383-85 (11th Cir. 1996) (fraudulent inducement of contract within scope of arbitration clause covering "any dispute . . . which may arise hereunder"); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co*, 867 F.2d 809, 813 (4th Cir. 1989) (claim of fraudulent inducement fell within scope of arbitration clause covering any issue "believed to constitute a breach or violation" of the contract).

In *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress International, Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993), the plaintiff alleged that the contract should be rescinded because it violated Illinois law. The Seventh Circuit considered the same language used in this case. The arbitration provision covered disputes "arising out of" the contract. The Seventh Circuit noted the narrow application of *Kinoshita* to its precise facts and concluded that "arising out of" covers all disputes "having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Id.* at 642. The court held that:

> Although Count I seeks to cancel the Agreement, it is nonetheless a result of the Agreement and has its origins in it. In that sense it "arises out of" the Agreement and is subject to arbitration. In fact, any dispute between contracting parties that is in any way connected with their contract could be said to "arise out of" their agreement and thus be subject to arbitration under a provision employing this language. At the very least, an "arising out of" arbitration clause would "arguably cover[]" such disputes, and, under our cases, this is all that is needed to trigger arbitration.

*Id.*

---

[5] The Ninth Circuit reached a similar result in *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (phrase "arising hereunder" covers a much narrower range of disputes than the phrase "arising out of or relating to").

This circuit has not yet decided whether a fraudulent inducement of the contract claim "arises out of" the contract.[6] We have previously held, however, that an arbitration clause requiring arbitration of any dispute arising out of an agreement is "extremely broad." *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir.1983). We agree with the reasoning of the Seventh Circuit in that a claim that a contract is voidable because it was fraudulently induced arises out of the contract. Resolution of Wellmont's claim will require reference to the 2001 Contract. In addition, because all doubts are to be resolved in favor of arbitration, consistent with every circuit that has addressed this issue, we hold that "arising out of" is broad enough to include a claim of fraudulent inducement of a contract.

## III.

The decision of the district court is REVERSED, and this case is REMANDED with instructions that the district court enter an order to arbitrate.

---

[6]JDHP argues that *Arnold*, 920 F.2d at 1271, interprets "arising under" to require arbitration of fraudulent inducement claims. The scope or application of the arbitration clause to that type of claim, however, was not an issue in *Arnold*.