RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0049p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WATSON WYATT & COMPANY,

*Petitioner-Appellant,*

*v.*

No. 06-2063

SBC HOLDINGS, INC.,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-71473—John Feikens, District Judge.

Argued: November 30, 2007

Decided and Filed: January 28, 2008

Before: ROGERS and SUTTON, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Edward A. Scallet, GROOM LAW GROUP, Washington, D.C., for Appellant. Michael F. Smith, BUTZEL LONG, Bloomfield Hills, Michigan, for Appellee. **ON BRIEF:** Edward A. Scallet, GROOM LAW GROUP, Washington, D.C., for Appellant. Michael F. Smith, Steven M. Ribiat, BUTZEL LONG, Bloomfield Hills, Michigan, Philip J. Kessler, BUTZEL LONG, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

BERTELSMAN, District Judge. Watson Wyatt & Company ("Watson Wyatt") appeals the district court's order denying in part its petition to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 4. Because we find that the arbitration provision is broadly written to include claims arising from events that occurred before the execution of the arbitration agreement, we **REVERSE**.

## I. FACTUAL BACKGROUND

Watson Wyatt sells actuarial and consulting services. SBC Holdings, Inc. ("SBC") is the sponsor of a pension plan for employees of the former Stroh's Brewery Company. In 1997, Watson

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Wyatt began providing actuarial and consulting services to SBC regarding the pension plan. At this time, the parties did not have a written contract or an agreement to arbitrate disputes.

In 2001, Watson Wyatt made a data input error that caused it to provide erroneous actuarial valuations and financial disclosures underestimating the plan's liabilities and overstating SBC's net worth. Watson Wyatt alleges that it discovered the error in 2004 and notified SBC.[1]

SBC claims that it relied on these erroneous reports in making important decisions, including determining the value of stock in six stock redemptions. SBC claims that as a result of Watson Wyatt's error it has suffered substantial damages.

On September 4, 2002, Watson Wyatt sent a letter to SBC seeking to formalize the terms and conditions of its engagement. In the letter, Watson Wyatt proposed that the attached terms and conditions become effective on October 1, 2002 and "apply to all the services that Watson Wyatt provides to SBC." Watson Wyatt asked SBC to sign the letter indicating its acceptance of the attached terms and conditions. On October 15, 2002, SBC's CEO signed the letter indicating its acceptance to the attached terms and conditions of engagement.

The terms and conditions of engagement contained the following clause regarding dispute resolutions:

> **Resolution of Disputes.** The parties will try to resolve any dispute or claim arising from or in connection with this agreement or the services provided by Watson Wyatt by appropriate internal means, including referral to each party's senior management. If the parties cannot reach a mutually satisfactory resolution, then any such dispute or claim will be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), and the Federal Arbitration Act, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction . . . .

In the spring of 2004, Watson Wyatt informed SBC of the data input error that occurred in 2001. After several letters between the parties, Watson Wyatt suggested that SBC submit its claims to arbitration. SBC denied that it was obligated to submit the claims to arbitration since the claims arose from Watson Wyatt's error in 2001, before the execution of the arbitration agreement.

On April 15, 2005, Watson Wyatt initiated this action in the district court by filing a petition to compel arbitration pursuant to 9 U.S.C. § 4. On June 30, 2006, the district court issued an opinion and order granting in part and denying in part the petition to compel arbitration. The trial court found that the arbitration clause is silent as to its retroactivity and, therefore, under Michigan law, it did not apply to disputes regarding damages that arose from the pre-agreement analyses. Accordingly, the trial court denied the petition to compel arbitration on the pre-agreement claims, but ordered arbitration of damages arising from the post-agreement claims. Watson Wyatt appeals the district court's order denying in part its petition to compel arbitration.

## II. JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(B). *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 447 (6th Cir. 2005), *cert. denied*, 546 U.S. 1214 (2006).

This court reviews *de novo* a district court's conclusions of law regarding whether to compel arbitration pursuant to the Federal Arbitration Act (FAA). *See Nestle Waters North America, Inc.*

---

[1]SBC does not allege that Watson Wyatt fraudulently concealed its error.

*v. Bollman*, 505 F.3d 498, 501-02 (6th Cir. 2007); *Glazer*, 394 F.3d at 450; *Burden v. Check into Cash of Kentucky LLC*, 267 F.3d 483, 487 (6th Cir. 2001).

## III.  ANALYSIS

The FAA manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). *See also Glazer*, 394 F.3d at 451.  This policy, however, is not so broad that it compels the arbitration of issues not within the scope of the parties' arbitration agreement. *Nestle Waters*, 505 F.3d at 504; *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003).  "Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Bratt Enters.*, 338 F.3d at 612 (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).

Here, the parties agree that a valid agreement to arbitrate existed between them, but they disagree as to whether the claims arising before the execution of the arbitration agreement are within the scope of the agreement.  The parties' agreement to arbitrate states, in pertinent part:

> **Resolution of Disputes.**  The parties will try to resolve *any dispute or claim arising from or in connection with this agreement or the services provided by Watson Wyatt* by appropriate internal means, including referral to each party's senior management.  If the parties cannot reach a mutually satisfactory resolution, then any such dispute or claim will be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), and the Federal Arbitration Act, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. . . .

(emphasis added).

The district court's decision not to compel arbitration of the pre-agreement claims was based upon its finding that the arbitration clause is silent as to whether it was intended to apply to services provided before the parties executed the agreement.  The district court concluded that, because the clause is silent on the issue of retroactivity, Michigan's law precluding contracts from being construed to operate retrospectively applies to preclude arbitration of the claims arising before the execution of the agreement.

Watson Wyatt argues that the trial court erred in finding that the clause is silent as to whether it applies to services provided prior to the execution of the arbitration agreement because the arbitration provision provides that it applies to "any dispute or claim arising from or in connection with . . . the services provided by Watson Wyatt."  Thus, it argues that any claim arising from its services is covered by the arbitration provision.

This court has previously stated that where, as here, an arbitration clause is broadly written, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) (quoting *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)). *See also Masco v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004).

This court has also stated that broadly written arbitration clauses must be taken at their word and extend to situations that fall within their purview. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 396 (6th Cir. 2003).  In *Fazio*, investors sued their securities brokerage firms for damages sustained when a broker retained by the firms stole assets from their accounts.  The investors' agreements with

the brokerage firms contained an arbitration clause mandating that "[a]ny controversy arising out of or relating to any of my accounts, to transactions with you for me, or to this or any other agreement or the construction, performance or breach thereof, shall be settled by arbitration." *Id.* at 392. This court held that the arbitration clause was broad and, taken at its word, applied to any dispute arising out of the agreements, accounts, or transactions. Thus, since unauthorized trading, excessive risk-taking and churning are problems associated with brokerage accounts, they were covered by the broad arbitration clause. *Id.* at 396.

Similarly, the arbitration agreement in the case at bar is broadly worded in that it applies to "any dispute or claim arising from or in connection with this agreement *or the services provided* by Watson Wyatt." (emphasis added). It is noteworthy that the language of the agreement specifically extends its application to any claims arising from "the services provided by Watson Wyatt."

The First Circuit construed an arbitration clause using the same "or the services provided" language at issue in the case at bar, and held that the clause applied retroactively. *Kristian v. Comcast Corp.*, 446 F.3d 25, 33 (1st Cir. 2006). In *Kristian*, the agreement provided for arbitration if the parties were unable to resolve informally "any claim or dispute related to or arising out of this agreement or the services provided." *Id.* at 31. The court found that reading most naturally the phrase "or the services provided" resulted in a finding that the language covers more than claims arising "out of the agreement." *Id.* at 33. Thus, the court held that the claims arising out of "the services provided" were not limited by the time frame of the agreement, and the arbitration clause applied retroactively. *Id.* at 33. *See also In re Verisign, Inc.*, No. 06-4165, 2007 WL 2705221, at *48 (N.D. Cal. Sept. 14, 2007) (arbitration provision broadly construed to cover services provided prior to the agreement).

Given the directives of the Supreme Court and this Circuit, the district court was required to give a general presumption of arbitrability and to resolve any doubts in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Masco*, 382 F.3d at 627 (quoting *Highlands Wellmont Health*, 350 F.3d at 576-77). *See also Shearson/American Express, Inc.* v. *McMahon*, 482 U.S. 220, 226 (1987). Clearly, the dispute over the data entry error arises out of the services that Watson Wyatt provided to SBC, and it thus is encompassed by the arbitration clause.[2]

SBC argues that other provisions in the contract indicate that the parties did not intend for its terms to be applied retroactively. Specifically, SBC points to the use of the terms "will provide" or "will perform" in paragraph 3, which defines the scope of Watson Wyatt's services. Further, SBC argues that Watson Wyatt's statement in its cover letter, which SBC signed to show its agreement to the terms, that the terms would become effective October 1, 2002, is evidence that the parties did not intend for the arbitration provision to apply retroactively.

The cover letter also explains, however, that Watson Wyatt was undertaking a company-wide initiative to formalize the terms and conditions of its engagement with all of its clients, which indicates that it is referring to a prior relationship. The cover letter also stated that the terms would "apply to all the services that Watson Wyatt provides to SBC Holdings," and did not indicate that it only applied to services to be provided in the future.

The trial court also found that the fact that the effective date predated the actual date of the agreement[3] demonstrates that the parties did not expect that the agreement would encompass pre-

---

[2]An arbitration clause using the "in connection with" language was also broadly construed in *Tennessee Imports, Inc. v. Filippi*, 745 F. Supp. 1314, 1325 (M.D. Tenn. 1990).

[3]SBC's CEO did not sign the agreement until October 15, 2002 .

agreement conduct. Watson Wyatt, however, sent the agreement to SBC on September 4, 2002 and asked that SBC respond before September 30, 2002. Thus, Watson Wyatt did not intend for the effective date of the agreement to predate the signature date.

In addition, the arbitration clause is to be examined separately from the rest of the contract for purposes of determining whether the dispute should be submitted to arbitration. *Glazer*, 394 F.3d at 453. Thus, the court must look at the language of the arbitration clause specifically to determine whether it covers the pre-agreement disputes. *See Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993) (use of language "arising out of your business *or* this agreement shall be submitted to arbitration" evidenced intent to cover more than just matters set forth in the contract) (emphasis added); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,*198 F.3d 88, 99 (2d Cir. 1999) (relevant inquiry is whether claims fall within language used in arbitration clause, not when they arose); *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972) (arbitration clause in constitution of New York Stock Exchange encompassed disputes arising prior to plaintiff's joining Exchange as it was broadly written to encompass "any controversy between parties who are members").

The cases cited by SBC are distinguishable, as noted by the trial court, because they involve a series of written contracts in which the only arbitration clause was contained in the later contract and either the clause was too narrowly worded to apply to the dispute, or the parties evidenced an intent to be bound only by the contract in effect at the time of the dispute.[4] The case at bar does not involve a situation where the parties had prior written contracts governing their relationship.

 In fact, the cover letter specifically explains that the intent of the proposed agreement was to formalize Watson Wyatt's terms and conditions of engagement with its clients because historically it did not set forth its terms in writing. The letter further explains that the terms would apply to "all services that Watson Wyatt provides to SBC." Accordingly, the language contained in the cover letter, as well as the broad language contained in the arbitration agreement itself, is evidence of the parties' intent to set forth the terms of their ongoing relationship in writing, a type of umbrella agreement governing the parties overall relationship, and that the arbitration agreement applied retroactively. *See Nestle Waters North America, Inc. v. Bollman*, 505 F.3d 498, 506 (6th Cir. 2007) (interpretation of contract could not be determined without reference to prior contract containing arbitration clause and ongoing relationship between parties).

Here, the arbitration clause is broadly worded and encompasses all claims "arising from or in connection with . . . the services provided by Watson Wyatt." Accordingly, the FAA requires enforcement of the arbitration agreement because SBC's claim arises out of the services provided by Watson Wyatt. Therefore, the trial court erred in finding that the matter was not subject to the arbitration clause.

---

[4]*See Security Watch , Inc., v. Sentinel Sys., Inc.*, 176 F.3d 369 (6th Cir. 1999) (prior contract covering time of dispute contained choice of forum clause, not arbitration agreement); *Choice Sec. Sys., Inc. v. AT&T Corp.*, No. 97-1774, 1998 WL 153254 (1st Cir. Feb. 25, 1998) (parties entered into series of one-year written contracts); *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927-28 (2d Cir. 1990) (arbitration clause narrow and specifically applied only to disputes arising during its term); *Nordin v. Nutri/System, Inc.*, 897 F.2d 339, 345 (8th Cir. 1990) (arbitration clause applied only to claims arising from settlement agreement, and was thus not worded broadly enough to apply to prior non-disclosure agreement); *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527 (E.D. Va. 1999) (employee hired on project-by-project basis with separate contract for each project); *Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc.,* 745 So. 2d 271 (Ala. 1999) (language not broad enough to encompass prior invoice and lacked legal and logical nexus between source of dispute and arbitration provision); *George Washington University v. Scott,* 711 A.2d 1257 (D.C. 1998) (arbitration clause stated that it applied to claims arising out of this contract, did not state it applied to prior contract in effect at time of dispute); *In re Hops Antitrust Litig.*, 655 F. Supp. 169, 172-73 (E.D. Mo. 1987) (several contracts encompassed discrete transactions between parties and no evidence that later arbitration clause intended to supplement earlier contracts), *appeal dismissed*, 832 F.2d 470 (8th Cir. 1987).

For the foregoing reasons, we **REVERSE** the portion of the district court's order that denied in part the petition to compel arbitration.