RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0418p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NESTLE WATERS NORTH AMERICA, INC.,
        *Plaintiff-Appellant,*

        *v.*

DONALD P. BOLLMAN and NANCY G. BOLLMAN,
        *Defendants-Appellees.*

No. 07-1031

>

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00577—Robert Holmes Bell, Chief District Judge.

Argued: September 10, 2007

Decided and Filed: October 12, 2007

Before: BOGGS, Chief Judge; and MARTIN and SUTTON, Circuit Judges.

---

## COUNSEL

**ARGUED:** Adam H. Charnes, KILPATRICK STOCKTON, Winston-Salem, North Carolina, for Appellant. Jon R. Muth, MILLER JOHNSON, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Adam H. Charnes, KILPATRICK STOCKTON, Winston-Salem, North Carolina, John M. DeVries, Douglas A. Donnell, Fredric N. Goldberg, MIKA, MEYERS, BECKETT & JONES, Grand Rapids, Michigan, for Appellant. Jon R. Muth, Monica C. Inhulsen, MILLER JOHNSON, Grand Rapids, Michigan, for Appellees.

---

## OPINION

---

        BOGGS, Chief Judge. Nestle Waters North America, Inc. ("Nestle") appeals from the district court's dismissal of its claims against Donald and Nancy Bollman ("the Bollmans"). Nestle had sought declaratory and injunctive relief regarding its rights to certain subsurface waters that the Bollmans had deeded to it. Notably, the deed in question was silent regarding arbitration. In response, the Bollmans contended that the dispute fell within the scope of an arbitration clause that the parties had included in the initial contract that established their business relationship. Although questions regarding the scope of arbitration clauses are familiar, the question of whether and when an arbitration clause in one contract encompasses a dispute arising out of a related agreement is less common in our case law. In the present case, we conclude that the parties intended that the arbitration clause in the contract establishing and defining their relationship should govern the present dispute; therefore, we affirm the judgment of the district court.

1

# I

The Bollmans own approximately 868 acres of real property in Mecosta County, Michigan, which contains several fresh water springs and an aquifer. On December 21, 2000, Nestle and the Bollmans signed a Purchase and Sale Agreement (PSA), in which Nestle agreed to purchase certain property rights from the Bollmans. The PSA divided the 868 acres into two parts: the Sanctuary and the Property. In exchange for consideration of $5 million, the Bollmans would: (1) deed certain subsurface intervals beneath the Property and all of the water rights related to the Property to Nestle as specified in a Subsurface and Water Rights Deed (the "Deed") and lease the Property to Nestle under specified terms (the "Lease"), (2) grant Nestle easements of ingress to and egress from the Property across the Sanctuary and rights of way necessary for Nestle to use the Property (the "Easement"), and (3) enter into Land Use Restriction Agreements setting forth restrictions on land use with respect to both the Property and the Sanctuary. The form of each of these documents was attached to the PSA as an exhibit and "made a part" of the PSA. Following the execution of the PSA, the parties executed the Deed, Lease, Easement, and Land Use Restriction Agreements as required, and Nestle began drilling and pumping water.

Later, the Bollmans and Nestle began to disagree regarding the permissibility of Nestle's pumping. The Bollmans presented Nestle with a copy of a Petition for Arbitration that the Bollmans intended to file with the American Arbitration Association. In their draft petition, the Bollmans characterized their dispute as "arising out of" the PSA. The Bollmans asserted that the Deed conveyed to Nestle rights to "water from any and all water sources" on the Property and that Nestle "had determined that the original well locations were inadequate to produce the gallons per minute it desired." Nestle then drilled an additional well, which resulted in the "groundwater zone of contribution" and "surface area contributing to the zone of contribution" both extending off the Property to the east. In other words, the additional well drew from "not only sources on the Property, but also from water sources on the Sanctuary to the east which, but for the pumping, would never flow beneath the Property or vent from springs on the Property." Asserting that Nestle's ability to pump out subsurface water under the Sanctuary amounted to acquisition of "property rights for which [Nestle] did not bargain or pay," the Bollmans' draft petition sought a declaration that Nestle was limited to water sources that would naturally "vent from springs on the Property." There is no indication that the Bollmans actually filed the Petition for Arbitration.

As the Bollmans indicated in their draft Petition for Arbitration, the PSA contains an arbitration clause. The clause states that "any controversy or claim ("Dispute") arising out of this Agreement between PBE and GSWA ("Disputing Parties"), which cannot otherwise be resolved by the Disputing Parties themselves, shall be settled by arbitration by a neutral arbitrator mutually acceptable to PBE and GSWA . . . ."[1] The arbitration clause further specifies both the procedure for selecting the arbitrator and the substantive qualifications that the arbitrator should possess, including at least fifteen years experience practicing law, "with expertise in water utility operations, water rights, and the process of deciding disputes and interpreting real estate contracts."

By contrast, the other documents vary significantly regarding arbitration. The Deed does not include an arbitration clause. The Lease includes the same detailed arbitration clause as the PSA. The Easement does not include an arbitration clause. The Land Use Restriction Agreements for the Sanctuary and Property contain identical arbitration clauses, stating that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach of this Agreement, shall be settled by arbitration in Grand Rapids, Michigan[,] in accordance with the Rules of Arbitration of the American Arbitration Association . . . ." Unlike the PSA's arbitration clause, the Land Use

---

[1] In the PSA and subsequent contracts, the Bollmans were also referred to as "Pat Bollman Enterprises" or PBE. Until 2002, Nestle was known as Great Springs Waters of America, Inc. ("GSWA").

Restriction Agreements' arbitration clauses do not specify the qualifications of the arbitrator or provide the same level of detail as the PSA arbitration clause.

On August 11, 2006, Nestle filed its declaratory judgment action after receiving the Bollmans' draft Petition for Arbitration. In its complaint, Nestle argued that the Bollmans' allegations contradicted the plain language of the broad grant of rights contained in the Deed, which Nestle attached to its complaint.[2] Accordingly, Nestle sought a declaration that the Bollmans' claims lacked merit and an injunction preventing the Bollmans from interfering with Nestle's rights to continue withdrawing water. Nestle's complaint did not refer to the PSA or any of the other agreements.

The Bollmans moved to dismiss Nestle's complaint or, in the alternative, to stay the action and compel arbitration. After briefing, but without a hearing, the district court found that the dispute fell within the scope of the arbitration clause in the PSA and granted the motion to dismiss. Nestle filed a timely notice of appeal.

## II

A district court's decision whether to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, is reviewed *de novo. Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Similarly, the district court's decisions regarding the arbitrability of a particular dispute are reviewed *de novo. McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004).

## III

Before compelling arbitration, a court must determine whether a dispute is arbitrable, "meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Javitch*, 315 F.3d at 624; *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002); *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986); *United Steelworkers v. Saint Gobain Ceramics & Plastics, Inc.*, No. 05-6851, ___ F.3d ___, 2007 WL 2827583, at *1 (6th Cir. Oct. 2, 2007) (en banc). In this case, neither the validity of the arbitration clause in the PSA nor the application of the FAA is disputed. Rather, the sole issue is whether Nestle's action for declaratory judgment is within the scope of the PSA's arbitration clause. Although it is a close question because both parties' arguments rely on controlling principles of contract and arbitration law, we conclude that the action is within the scope of the arbitration clause.

This appeal presents two issues. The first issue is whether Nestle's claim arises primarily out of the Deed or the PSA. If Nestle's claim arises primarily out of the PSA, then the arbitration clause in the PSA obviously applies. If it arises primarily out of the Deed, as the district court found, then the second issue is whether the arbitration clause nevertheless encompasses the dispute.

### A. The Basis of the Dispute

Although the Bollmans' arguments in their draft Petition for Arbitration and, to a lesser extent, the arguments in Nestle's district court complaint, range beyond the Deed, the only dispute before the district court was the claim presented in Nestle's complaint. The district court correctly found that although "the complaint seeks a declaration that is broader than the claim based on the Deed, the allegations in the complaint are limited to the Deed." Although there is no case law

---

[2]Nestle also argued that Michigan law did not recognize the limits on drilling and pumping that the Bollmans asserted. The district court did not address this argument, and neither do we.

squarely on point, the district court's finding comports with the traditional notion that a plaintiff is master of his claim.

In their draft petition, the Bollmans asserted that the Deed limits Nestle to extraction and consumption of "water from any and all water sources" on the Property. Although "water sources" is nowhere defined in any of the documents, the Bollmans looked to the use of the term in the PSA, Lease, and Land Use Restriction Agreements as evidence of the allegedly restrictive meaning of the term. Based on those documents, the Bollmans' draft requested an arbitrator's ruling that Nestle was limited to "those waters which would naturally vent from springs on the Property."

The Bollmans' intent to seek arbitration prompted Nestle to seek relief in district court. In its complaint, Nestle requested a declaration that "the Bollmans' claims referred to in this Complaint are without merit, and that Nestle is entitled to continue withdrawing water from the Wells without regard to the underground path traveled by the water molecules . . . or the place where the water molecules would have emerged to the surface in the absence of the Wells." Nestle admits that its action was filed in response to the Bollmans' Petition for Arbitration. Appellant's Br. 11. However, Nestle asserts that its complaint rests on "the plain language of the [Deed]" as the basis for its request for declaratory relief.

In their briefs to this court, the parties have continued their arguments regarding the basis of the dispute. Nestle reiterates that it sought "a declaration and injunctive relief based *solely* on its rights under the Deed." Appellant's Br. 12. The Bollmans assert that all of the various documents form but one contract, and that the dispute turns on the meaning of "water sources" as used throughout the "contract." Appellee's Br. 4-5. According to the Bollmans, "resolution of the parties' respective claims will require interpretation of the term 'water sources' throughout the entire contract, not just the Deed." Appellee's Br. 13.

The traditional rule that a plaintiff is master of his claim suggests that Nestle is entitled to seek relief solely on the basis of language in the Deed. Just as artful pleading of defenses cannot be sufficient to raise a federal question for purposes of removal, *see, e.g.*, *Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("The party who brings a suit is master to decide what law he will rely upon . . . ."); *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908) (stating the well-pleaded complaint rule), the Bollmans' artful characterization of the claim in this case should not be sufficient to turn an otherwise non-arbitrable claim into an arbitrable one. If Nestle wishes to base its claim solely on the Deed, then the dispute before the court may be said to arise primarily from the Deed. In this case, the district court applied these principles correctly and found that the dispute arose primarily from the Deed. Of course, Nestle's pleadings are not dispositive regarding arbitrability. The remaining issue is whether the arbitration clause in the PSA nevertheless encompasses the dispute.

## B. The Scope of the Arbitration Clause

Because the dispute arose primarily from the Deed, which is silent regarding arbitration, the dispute is arbitrable only upon a finding that the arbitration clause in the PSA encompasses the Deed. More generally, this case requires us to determine the scope of an arbitration clause where parties have entered into multiple contracts as part of one overall transaction or ongoing relationship. Ultimately, we conclude that the PSA's arbitration clause is sufficiently broad to encompass this dispute.

We examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration. *See Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006); *Great Earth Cos. v. Simons*, 288 F.3d 878 (6th Cir. 2002). This court has previously noted the large number of cases from the Supreme

Court encouraging arbitration in a wide variety of contexts and emphasizing the federal policy in favor of arbitration.  *See Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir. 1989).  The Supreme Court has "interpreted the Federal Arbitration Act as establishing that, 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  *Ibid*. (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  Moreover, "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)).  This court has stated even more forcefully that "any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568-77 (6th Cir. 2003)).

However, countervailing principles also apply.  As this court has frequently noted, "the federal policy in favor of arbitration is not an absolute one.  Arbitration under the Federal Arbitration Act is 'a matter of consent, not coercion.'"  *Higley*, 445 F.3d at 863 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  The Supreme Court has stated: "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted).  In sum, "no matter how strong [sic] the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration."  *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (citations omitted).

Keeping these countervailing principles in mind, this court has held that in deciding whether an issue is within the scope of an arbitration agreement courts should "ask if an action could be maintained without reference to the contract or relationship at issue.  If it could, it is likely outside the scope of the arbitration agreement."  *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003).  This court has applied this method to determine whether particular torts or challenges to the validity of the contract itself are within an arbitration clause.  *See, e.g., Fazio*, 340 F.3d at 395-96 (holding that alleged theft of funds is within arbitration clause); *Highlands Wellmont*, 350 F.3d at 576-77 (holding that alleged fraudulent inducement claim is within arbitration clause).

In the context of multiple contracts, this court has adopted a more narrow test of arbitrability, examining which agreement "determines the scope of" the contested obligations.  We have rejected the view that a dispute is arbitrable merely because it "touch[es] matters covered by" the arbitration clause.  *Alticor, Inc. v. Nat'l Union Fire Ins. Co.*, 411 F.3d 669, 672-73 (6th Cir. 2005).  In *Alticor*, we held that an arbitration clause in a later agreement could not apply to a dispute over substantive rights and obligations stemming from an earlier agreement.  411 F.3d at 671-73.  Similarly, we have held that an arbitration clause in a later agreement should not be read backward into an earlier agreement merely because the later agreement had a boilerplate "merger" clause.  *See Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369 (6th Cir. 1999).  None of our precedents, however, has addressed the application of an arbitration clause in an earlier contract to a dispute arising out of a later agreement, whose execution was required by the first contract.

In the instant case, the district court began its analysis with *Fazio*, but then ultimately relied on a Seventh Circuit standard.  In the Seventh Circuit, "arising out of" clauses reach "all disputes having their origin or genesis in the contract, whether or not they implicate interpretation, or performance of the contract per se."  *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993).  Applying this broad standard, the district court concluded that the

Deed "had its genesis" in the PSA; therefore, the arbitration clause in the PSA encompassed the Deed. The district court found that this court, in *Highlands Wellmont*, had cited *Sweet Dreams* with approval. However, the *Highlands Wellmont* panel did not come close to adopting the *Sweet Dreams* standard. Rather that panel ruled more narrowly and without endorsing any standard beyond that set in *Fazio*. *See Highlands Wellmont*, 350 F.3d at 577-78.

We do not think it necessary to resort to the *Sweet Dreams* test to decide this case. Rather, the standard we announced in *Fazio* – that if an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement – along with the presumption in favor of arbitrability and the intent of the parties provide sufficient guidance. Moreover, the *Fazio* standard has the advantage of being, even if only marginally, more definite and more limited than the *Sweet Dreams* "origin and genesis" test. Finally, *Sweet Dreams* concerned the issue of whether an action to nullify a contract on grounds of fraudulent inducement can come within an arbitration clause in that very contract. By contrast, the case at hand does not involve any challenge to the contracts themselves. Rather, this case presents the question of how an arbitration clause applies when found in one of several valid agreements that arose in the course of a single transaction or relationship. Of course, our rejection of the district court's reasoning in relying on *Sweet Dreams* does not preclude us from affirming the district court on other grounds supported by the record. *See City Mgmt. Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 251 (6th Cir. 1994).

Applying *Fazio* to the instant case, we hold that the arbitration clause in the PSA encompasses the dispute. As an initial matter, the arbitration clause in this case governs any controversy "arising out of" the PSA, and we have previously held that such an arbitration clause is "extremely broad." *Highlands Wellmont*, 350 F.3d at 578 (quoting *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983)). Thus, the presumption of arbitrability weighs in favor of finding this dispute covered by the arbitration clause. Furthermore, *Fazio* instructs that "the proper method of analysis is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." 340 F.3d at 395. In the instant case, we are convinced that the proper interpretation of the Deed could not be determined without reference to the PSA and the ongoing relationship between Nestle and the Bollmans. In return for consideration from Nestle, the PSA required the Bollmans to execute a series of documents. The form of each of the subsequent documents, including the Deed, was attached to and made a part of the PSA. In the course of interpreting the terms of the Deed, it is almost certain that reference will be made to the other documents, as well as the PSA, since it was the PSA that created the relationship between Nestle and the Bollmans in the first place. Thus, *Fazio* does not dictate that this dispute is outside the scope of the arbitration clause.

Moreover, unlike the sequence of contracts in *Alticor* and *Security Watch*, the arbitration clause in this case was written into the contract that was executed first and pursuant to which all of the subsequent agreements and documents were executed. Unlike the contracts in *Alticor*, the definition of the disputed term "water sources" is not found within the Deed. Nor can the Deed fairly be said to govern the parties' obligations to each other. While the sequence of contracts may not be dispositive, the fact that the arbitration clause is part of the umbrella agreement governing the parties' overall relationship is sufficient to distinguish our facts from those cases in which opportunistic parties sought to apply arbitration clauses from later agreements to conduct arising out of earlier agreements.

Given that the presumption favors arbitrability, and that *Fazio* does not exclude this dispute from the arbitration clause, the final issue is whether any evidence of a contrary intent of the parties rebuts the presumption. Nestle offers several alternative arguments against arbitration based on intent. First, Nestle notes that the PSA arbitration clause applies only to disputes "arising out of this

Agreement" and that "this Agreement" is defined in the PSA as referring to the PSA only. Appellant's Br. 21. However, the PSA also states that the form of the Deed is attached to the PSA as an exhibit "and made a part hereof." This clause diminishes Nestle's argument that the parties intended to keep the PSA entirely separate from the other documents. Indeed, it is hard to square Nestle's contention that the PSA arbitration clause is merely concerned with disputes about the obligations of the PSA (e.g., whether the Deed was delivered and not the interpretation of the Deed itself), Appellant's Br. 24 n.8, with the fact that the PSA arbitration clause requires the arbitrator to have significant legal experience in water rights and utilities law. Rather, the inclusion of this specification for the arbitrator suggests that the parties contemplated that the arbitrator could decide questions regarding the conveyance of water rights itself; that is, issues involving the Deed.[3]

Second, Nestle makes an *expressio unis est exclusio alterius* argument based on the fact that the PSA, Lease, and Land Use Restriction Agreements contain arbitration clauses, while the Deed and Easement do not. This argument is also unavailing. Nestle is correct that "deeds are contracts" in that general principles of contract interpretation apply to deeds and deeds frequently contain covenants which are enforceable like contracts even if the grantee does not sign the deed (as in a so-called "deed poll," where only the grantor signs the deed). Appellant's Br. 32-33. Nestle states that "while arbitration clauses in deeds are unusual, they are not unprecedented." Appellant's Br. 33. In support of this claim, Nestle cites a Fourth Circuit case, a Connecticut state case, and a Georgia state case.[4] The obscurity and paucity of the citations belies Nestle's suggestion that the inclusion of arbitration clauses in deeds is a sufficiently well-established background principle that the Deed's silence evidences the parties' intent not to arbitrate. Moreover, while Nestle appears correct that "there is no provision of Michigan law that bars grantors from including" arbitration clauses in deeds, Michigan's own arbitration statutes forbid arbitration of "the claim of any person to any estate, in fee or for life, in real estate . . . ." Mich. Comp. Laws § 600.5005. Given such a statute, it would seem most unlikely that the Deed's silence regarding arbitration can be taken for all Nestle suggests.

Further research has not yielded any cases referencing an arbitration clause in an instrument purporting to convey mineral, oil and gas, or groundwater rights. In its explanation of Michigan law, Nestle relied in part on a treatise on the subject. However, none of that book's sections on mineral rights or subsurface water rights addresses arbitrability and none of the draft conveyance forms included in the treatise includes an arbitration clause. *See* 1 JOHN G. CAMERON, MICHIGAN REAL PROPERTY LAW §§ 2.1-2.65, 3.11 (3d ed. 2005). Moreover, Cameron's discussion of covenants in deeds does not indicate that anything other than the traditional covenants (restrictive covenants, warranties of title, etc.) are contemplated. *Id.* § 10.10.

---

[3] In further support of its argument, Nestle relies on a Texas appellate court decision holding that an arbitration clause that applies to "this Agreement" should not be applied to later agreements. Appellant's Br. 24-25; *Christus Spohn Health Sys. Corp. v. Nueces County Hosp. Dist.*, 39 S.W.3d 626 (Tex. Ct. App. 2000). The logic of that case, however, rested on the fact that the parties had deliberately alternated between references to "this Agreement" and "this Agreement and related agreements" for different clauses of the master agreement. *See id.* at 629-30; *cf. Gerwell v. Moran*, 10 S.W.3d 28 (Tex. Ct. App. 1999) (finding that master agreement's arbitration clause could apply to even unrelated contracts). Nestle also cites a case from the District of Massachusetts holding a claim outside the scope of an arbitration clause that is distinguishable because, in that case, the later agreement, with no arbitration clause, contained an integration clause indicating the parties' desire that it stand alone and the later agreement was part of a different "relationship." *See Bowlby v. Carter Mfg. Corp.*, 138 F. Supp. 2d 182, 188 (D. Mass. 2001).

[4] *See R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157, 159 (4th Cir. 2004) (noting that deed contained arbitration clause for disputes arising out of covenants to maintain common areas); *John A. Errichetti Assocs. v. Boutin*, 439 A.2d 416, 418 (Conn. 1981) (enforcing arbitration clause); *Floyd v. Hoover*, 234 S.E.2d 89, 91 (Ga. Ct. App. 1977) (noting that deed contained arbitration clause governing the price to be paid should the grantor exercise an option to repurchase).

Third, Nestle argues that applying the PSA's arbitration clause to the later agreements would render the arbitration language in the Lease and the Land Use Restriction Agreements mere "surplusage." Appellant's Br. 22-23. The Lease contains a clause identical to that in the PSA, while the Land Use Restriction Agreements contain less detailed arbitration clauses. However, if one accepts that the only documents without arbitration clauses were the Deed and Easement because, being land conveyances, such documents would not be expected to have arbitration clauses, then it may be that the Bollmans and Nestle wrote arbitration clauses into the Lease and Land Use Restriction Agreements out of an abundance of caution. That is, since Leases and Land Use Restriction Agreements may frequently contain arbitration clauses, their absence would have furnished the kinds of arguments against arbitration that Nestle attempts to make regarding the Deed. Moreover, no one is suggesting that the PSA arbitration clause completely supplants the clauses in the other documents. Rather, it may be that the parties wanted an expert in water rights to review the lease and so included the more detailed clause in the Lease to be sure that an arbitrator with those qualifications would preside. Conversely, there is nothing undue in assuming that the parties felt no need for such an expert to review the Land Use Restriction Agreements and opted for a more general arbitration clause in that case.

We are mindful of the Supreme Court's admonition that we should "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract . . . ." *Waffle House*, 534 U.S. at 294. However, Nestle's arguments simply do not lead us to conclude that enforcing the arbitration agreement would violate that premise. Rather, the evidence of the parties' intent and our own precedents counsel that the dispute over the Deed is arbitrable.

**IV**

Therefore, for the reasons set out above, we AFFIRM the district court's grant of the Bollmans' motion to dismiss.