[Cite as *Woodville Ent., L.L.C. v. Kokosing Materials, Inc.*, 2017-Ohio-5844.]

# IN THE COURT OF APPEALS OF OHIO
## SIXTH APPELLATE DISTRICT
## SANDUSKY COUNTY

WOODVILLE ENTERPRISE, LLC,

    PLAINTIFF-APPELLANT,                 CASE NO. 16CAS13

    v.

KOKOSING MATERIALS, INC., ET AL.,

                                    O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Sandusky County Common Pleas Court
Trial Court No. 16CV84

Judgment Affirmed

Date of Decision: July 14, 2017

APPEARANCES:

    *Dennis E. Murray, Jr.* for Appellant

    *Andrew R. Mayle* for Appellees

**PRESTON, P.J.**

{¶1} Plaintiff-appellant Woodville Enterprise, LLC ("Woodville") appeals the March 16, 2016 judgment entry of the Sandusky County Court of Common Pleas staying the proceedings in that court pending arbitration. For the reasons that follow, we affirm.

{¶2} This case stems from an agreement entered into on August 29, 2008 between defendant-appellee Kokosing Materials, Inc. ("Kokosing"), and Woodville. As part of that agreement, the parties formed two new ventures—Area Aggregates ("Aggregates") and Area Asphalt, LLC ("Asphalt"). The parties entered into a master agreement, as well as an operating agreement for Aggregates and an operating agreement for Asphalt. Section 24 of the master agreement is an arbitration provision which says that any claim, dispute, or demand as to any term or condition of that agreement must be resolved through arbitration.

{¶3} Relations between the parties began to deteriorate, and Woodville filed its complaint against Kokosing on February 2, 2016. (Doc. No. 1). In its complaint, Woodville alleged fraud, self-dealing, breach of fiduciary duty, and breach of contract on the part of Kokosing, with the various allegations stemming from Kokosing's management of the companies created by the operating agreements. (*Id.*). Woodville sought money damages, the costs of the action, and attorney fees, as well as injunctive relief and the imposition of a constructive trust. (*Id.*).

{¶4} Kokosing filed a motion to stay the proceedings pending arbitration on February 4, 2016. (Doc. No. 7). In that motion, Kokosing argued that the arbitration provision at issue is very broad and that it is applicable to disputes arising from the operating agreements. (*Id.*). Woodville filed a brief in opposition to the motion to stay the proceedings pending arbitration on February 24, 2016. (Doc. No. 13). In that brief, Woodville argued that the arbitration provision in the master agreement was limited by its terms to disputes arising from that agreement and was therefore inapplicable to disputes arising from the operating agreements. (*Id.*).

{¶5} The trial court granted Kokosing's motion to stay the proceedings pending arbitration on March 16, 2016. (Doc. No. 18).

{¶6} Woodville filed its notice of appeal on April 11, 2016. (Doc. No. 19). Woodville brings one assignment of error for our review.

**Assignment of Error**
**The Trial Court Erred In Interpreting The Scope Of An Arbitration Provision In A Written Agreement Between The Parties To Cover Claims Brought For Violations Related To Separate Contracts, Which Were Executed Contemporaneously With That Agreement.**

{¶7} In its sole assignment of error, Woodville argues that the trial court erred in interpreting the arbitration provision in the parties' master agreement to cover claims brought for violations of other contracts executed contemporaneously with the master agreement. Specifically, Woodville argues that the trial court erred

in basing its decision on cases involving single contracts rather than cases involving multiple contracts. Woodville argues that cases involving multiple contracts must be analyzed differently from single-contract cases because an entirely separate body of law is applicable. Woodville further argues that the parties clearly did not intend the arbitration clause in the master agreement to cover breaches of the operating agreements because the operating agreements included merger clauses preventing extraneous provisions from being read into them. Woodville further argues that the trial court mistakenly found that a cross-default clause in the master agreement incorporated the operating agreements by reference. Woodville last argues that the trial court applied the wrong test in finding that this dispute was subject to arbitration and that, even if the trial court applied the correct test, it applied that test incorrectly.

{¶8} Whether a party has agreed to submit an issue to arbitration is an issue we review de novo, a standard under which we accord no deference to the ruling of the trial court. *Arnold v. Burger King*, 8th Dist. No. 101465, 2015-Ohio-4485, ¶ 11. *See also Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 2. Arbitration is a matter of contract, and a party cannot be made to submit to arbitration unless he has agreed to do so. *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, ¶ 11. A state court may rely on a federal standard in applying state law on the issue of arbitrability, but that standard must be a correct statement of both Ohio law and applicable federal

precedent. *Id.* ¶ 15. When a contract contains an arbitration provision, there is a strong presumption in favor of arbitration in the sense that arbitration should not be denied unless it can be said with "positive assurance" that the arbitration clause is not susceptible to an interpretation that covers the dispute in question. *Id.* at ¶ 14. The inquiry is whether an action can be maintained "without reference to the contract or relationship at issue." *Alexander v. Wells Fargo Fin.*, 122 Ohio St.3d 341, 2009-Ohio-2962, ¶ 25; *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003). If the action can be maintained without reference to the contract or relationship at issue, then the action is likely beyond the scope of the arbitration agreement. *Fazio* at 395. Doubtful cases must be resolved in favor of coverage. *Aetna* at ¶ 14.

{¶9} When determining whether an issue is fit for arbitration, we must first determine whether the arbitration clause includes limitations as to arbitrability, such as whether the arbitration clause removed specific types of claims from its scope. *Id.* at ¶ 17. Second, we must determine whether the arbitration clause at issue is broad or narrow, it being understood that an arbitration clause that applies to "any claim or controversy arising out of or relating to the agreement" is the very paradigm of a broad arbitration clause. *Aetna* at ¶ 18. The Supreme Court of Ohio reinforced the same understanding of what constitutes a broad clause three years after *Aetna*. *Alexander* at ¶ 16.

{¶10} The arbitration clause at issue in this case does not, by its terms, remove a particular subset of claims from its scope. (*See* Plaintiff's Ex. 1 at 16). Section 24 reads:

> The parties agree that any claim, dispute, or demand concerning any term or condition of this [a]greement, and any claim, dispute[,] or demand ("Claims") concerning the breach, performance, or non-performance of any term of this [a]greement, by any party hereto, shall be resolved through arbitration.

(*Id.*). The same arbitration clause that removes no specific claims from the scope of arbitrability is, without question, a broad clause. *Aetna* at ¶ 18. The clause at issue uses the word "any" no fewer than four times. (Plaintiff's Ex. 1 at 16). In this sense, the language of section 24 is even broader than the language that the Supreme Court of Ohio said in *Aetna* was the paradigm of a broad clause. *Aetna* at ¶ 18. The only difference between section 24 and the language that *Aetna* held to be broad is that the former concerns "this" agreement, while the later speaks of "the" agreement. *Compare* (Plaintiff's Ex. 1 at 16) *with Aetna* at ¶ 18.

{¶11} Much of Woodville's argument, whether made with reference to merger clauses or cross-default clauses, centers on the contention that the master agreement and the two operating agreements were three separate contracts rather than one contract with separate parts. Even if we assume without deciding that this

case involves multiple contracts, the Supreme Court of Ohio did nothing to limit its *Aetna* analysis to cases involving one contract. *Aetna* at ¶ 16-18. In fact, *Aetna* itself involved multiple contracts. *Id.* at ¶ 3 (quoting the trial court's finding that the dispute did not "arise out of or relate to the *contracts*" between the parties). Despite the existence of multiple contracts in *Aetna*, the Supreme Court of Ohio held specifically that the test from *Fazio v. Lehman Bros., Inc.* was the proper one. *Id.* at ¶ 24.

{¶12} Federal precedent has held similarly. *Nestle Waters North America Inc. v. Bollman*, 505 F.3d 498 (6th Cir.2007). In *Nestle Waters North America, Inc. v. Bollman*, the Sixth Circuit Court of Appeals confronted a situation in which Nestle filed suit against the Bollmans over subsurface water rights. *Id.* at 499. The deed touching the water rights was silent as to arbitration, but the Bollmans argued that an arbitration clause in the contract that first established their business relationship with Nestle—one that predated the deed—should govern the dispute. *Id.* In concluding that the arbitration clause covered the dispute at issue, the court noted that it had adopted tests that differed from the *Fazio* standard in cases that involved multiple contracts. *Id.* at 504. The court analyzed multiple-contract cases by asking which agreement "determines the scope of" contested obligations, and it rejected the view that a dispute is arbitrable simply because it "touch[es] matters covered by" an arbitration provision. *Id.*, citing *Alticor Inc. v. Natl' Union Fire Ins.*

*Co.* 411 F.3d 669, 672-673 (6th Cir.2005). The court in *Nestle* further noted that other federal appellate courts had applied still other standards, such as one which held that "arising out of" clauses encompass "all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Id.* at 504-505, quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir.1993). Despite an obvious awareness of alternative standards and the opportunity to endorse one of them or propound its own, the court in *Nestle* unambiguously declared that *Fazio* articulated the proper standard in the Sixth Circuit even in cases that involved multiple contracts. *Nestle* at 505. We therefore conclude that the trial court, in applying the *Fazio* test, applied the proper standard for determining whether a matter is arbitrable.

{¶13} Woodville next argues that, if the trial court applied the proper standard in granting the motion to stay the proceedings, it applied that standard improperly because Woodville's action can be maintained without reference to the master agreement.

{¶14} We note from the outset that the broadness of the arbitration clause creates a presumption in favor of arbitrability. *Nestle* at 505. Arbitration is not limited to claims alleging breach of contract, and pleading claims creatively will not overcome a broad arbitration provision. *Aetna* at ¶ 19. Broad arbitration clauses

like the one at issue in this case have even been held to make alleged conversion arbitrable. *Fazio* at 395 (finding that allegations of theft were arbitrable because the lawsuit stemming from the theft would require the parties make reference to the agreement that includes the arbitration clause).

{¶15} Based on the principles above, we conclude that the trial court did not err in granting the motion to stay the proceedings pending arbitration. We cannot say with positive assurance that the arbitration provision does not encompass the dispute at issue here. The master agreement that contains the arbitration provision is the agreement that began the parties' relationship, and it is highly likely that the parties will need to reference the master agreement to at least some degree in the course of the dispute. *Nestle* at 505 (finding that arbitration applied because it was likely that the dispute would require reference to other documents, including the document that began the relationship between the parties).

{¶16} The cases reviewed above, together with the pro-arbitration presumption created by the broad arbitration clause, as well as the Supreme Court of Ohio's command that we resolve any doubts in favor of arbitrability, convince us that the trial court applied the proper legal test and that it applied that test correctly.

{¶17} For the forgoing reasons, Woodville's assignment of error is overruled.

Case No. 16CAS13

**{¶18}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

WILLAMOWSKI and SHAW, J.J., concur.

/jlr

Judges Vernon L. Preston, John R. Willamowski and Stephen R. Shaw, from the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.