**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 18a0594n.06**

**No. 18-3333**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 28, 2018
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MICHAEL MATALKA, | |
| Plaintiff-Appellee, | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | |
| HOME POINT FINANCIAL CORPORATION, | |
| Defendant-Appellant. | |

**BEFORE:** MOORE, CLAY, and DONALD, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Home Point Financial Corporation appeals the district court's March 19, 2018 order denying its motion to compel arbitration of Plaintiff Michael Matalka's complaint. Plaintiff's complaint was removed to federal court based on the parties' diversity of citizenship, and alleges—pursuant to Ohio state law—that Defendant fraudulently induced his assent to an oral employment contract, breached that contract, and unjustly retained the benefit of his services. For the reasons set forth below, we **AFFIRM**.

**BACKGROUND**

**Factual Background**

Defendant is a mortgage lender. Plaintiff is an individual with experience in the mortgage lending business. On April 6, 2015, Defendant and Plaintiff entered into a written contract in which Defendant agreed to employ Plaintiff as a "Branch Manager" (the "Branch Manager contract").

(RE 2, Complaint, PageID # 22.)[1] In that capacity, Plaintiff would oversee all operations at Defendant's branch office in Blacklick, Ohio, and his compensation would be based upon the branch's net profits.

At the same time, Plaintiff claims that Defendant and Plaintiff also entered into a separate oral contract in which Defendant agreed to further employ Plaintiff as a "Mid-Western Regional Manager" (the "Regional Manager contract").[2] (RE 2, PageID # 21, 23.) In that capacity, Plaintiff would help Defendant expand its retail mortgage division by recruiting Loan Production Offices ("LPOs") and Loan Officers ("LOs"), and his compensation would consist of a base salary plus various performance-based incentives. Defendant offered Plaintiff this additional position in order to persuade him to forego other job opportunities.

The Branch Manager contract contained an arbitration provision.[3] The Regional Manager contract did not.

**Procedural History**

On February 27, 2017, Plaintiff filed a complaint against Defendant in the Court of Common Pleas of Ohio. Defendant then removed the case to the United States District Court for the Southern District of Ohio based on diversity of citizenship. Plaintiff's complaint alleges that Defendant (1) fraudulently induced his assent to the Regional Manager contract by intentionally

---

[1] Except as otherwise indicated, record citations refer to the record in district court action No. 17-cv-00155.

[2] Defendant contests this fact, but in reviewing district court decisions regarding whether to compel arbitration, we view all facts and all inferences drawn therefrom in the light most favorable to the non-moving party. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

[3] The arbitration provision states that "[a]ll disputes, controversies, and claims, between Branch Manager [Plaintiff] and Employer [Defendant] arising out of or relating directly or indirectly to this Agreement shall be resolved by final and binding arbitration . . . ." (RE 5, Branch Manager contract, PageID # 58.)

or recklessly misrepresenting material facts about the compensation he would receive as a Regional Manager, (2) breached the Regional Manager contract by failing to compensate him pursuant to its terms, and (3) unjustly retained the benefits of the services he rendered in his Regional Manager capacity by failing to compensate him. For instance, Plaintiff's complaint alleges that he successfully recruited a LPO in South Carolina, but never received the performance-based incentives owed to him as a result of that recruitment.

In its Answer to Plaintiff's complaint, Defendant asserted that there was no Regional Manager contract. Rather, Defendant asserted that "Plaintiff rejected the proposed [Regional Manager] contract," including "[the] compensation offer for recruiting other [LPOs]." (RE 3, Answer, PageID # 29.) Defendant also asserted 17 defenses, one of which was that "Plaintiff is required to arbitrate this matter pursuant to the terms of the Branch Manager [contract]." (*Id.* at PageID # 32.) In furtherance of that defense, Defendant filed a Motion to Compel Arbitration. On March 19, 2018, the district court denied Defendant's motion, reasoning that "the parties did not agree to arbitrate claims relating to [Plaintiff's] work as a Regional Manager, and the arbitration clause [in the Branch Manager contract] does not cover such claims." (RE 13, Order, PageID # 102.) This appeal followed.

## DISCUSSION

### I.     Standard of Review

We review *de novo* district court decisions regarding whether to compel arbitration, including the arbitrability of particular disputes. *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 394 (6th Cir. 2014).

### II.     Analysis

Under the Federal Arbitration Act ("FAA"), arbitration provisions in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of [the] contract." 9 U.S.C. § 2. Prior to sending claims to arbitration however, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Secs.*, 315 F.3d 619, 624 (6th Cir. 2003). Because the parties in this case agree that the Branch Manager contract contained a valid arbitration provision—and that the Regional Manager contract did not—we need only answer whether Plaintiff's claims regarding the Regional Manager contract fall within the substantive scope of the Branch Manager contract's arbitration provision. *See JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 391 (6th Cir. 2008). Defendant contends that they do, while Plaintiff contends that they do not. The district court agreed with Plaintiff, and so do we.

Generally, in determining whether a specific dispute falls within the scope of a valid arbitration provision, we ask whether "[the] action could be maintained without reference to the contract or relationship at issue," looking to what the action "by necessity must describe." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). "If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008) (citation omitted). However, "where [the] parties have entered into multiple contracts as part of one overall transaction or ongoing relationship . . . [we] have adopted a more narrow test of arbitrability, examining which agreement 'determines the scope of' the contested obligations." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503–04 (6th Cir. 2007). "[This] question of whether and when an arbitration clause in one contract encompasses a dispute arising out of a related [contract] is less common in our case law," but our analysis remains straightforward. *Id.* at 499.

Under *Nestle Waters*, Plaintiff prevails because the Regional Manager contract determines the scope of all contested obligations. Plaintiff's complaint alleges that Defendant fraudulently induced his assent to the Regional Manager contract by intentionally or recklessly misrepresenting material facts about the compensation he would receive as a Regional Manager, breached the Regional Manager contract by failing to compensate him pursuant to its terms, and unjustly retained the benefits of the services he rendered in his Regional Manager capacity by failing to compensate him. And Defendant's obligation to compensate Plaintiff for his work as Regional Manager is located, commonsensically, in the Regional Manager contract. In contrast, Defendant's obligation to compensate Plaintiff for his work as Branch Manager is located, just as commonsensically, in the Branch Manager contract. The Branch Manager contract does not once refer or even allude to the position of Regional Manager.[4]

While we have at times still applied the broader *Fazio* test where the parties have entered into multiple contracts, *see, e.g.*, *Dental Assocs., P.C. v. Am. Dental Partners of Mich.*, 520 F. App'x 349 (6th Cir. 2013), Plaintiff also prevails under *Fazio* because his action can be maintained without reference to the Branch Manager contract or Plaintiff's employment relationship with Defendant in that capacity. By necessity, Plaintiff's fraudulent inducement claim must describe "(1) a false representation concerning a fact . . . material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) an intent to induce reliance

---

[4] One provision of the Branch Manager contract provides that "Employer [Defendant] desires to retain Branch Manager [Plaintiff] as an employee of Employer to act as a branch manager to conduct the business of Employer through a designated branch operation and to perform such other services as the Employer may direct, and Branch Manager desires to be so retained, in accordance with the terms of this Agreement." (RE 5, PageID # 46.) Defendant argues that this provision demonstrates that the Branch Manager contract governed any services Plaintiff provided as a Regional Manager, and accordingly that the Branch Manager contract determined the scope of all contested obligations. But this argument overlooks the provision's clear focus on services provided by Plaintiff "as a branch manager," as well as the modifying phrase "in accordance with the terms of this Agreement"—*i.e.* the Branch Manager contract. The district court correctly noted that "[this] vague, catch-all provision[] do[es] not transform the Branch Manager [contract] into an Any-Employment-Assigned [contract]." (RE 13, PageID # 106.)

on the representation; (4) justifiable reliance upon the representation . . .; and (5) injury proximately caused by the reliance." *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 478 (6th Cr. 2014) (quoting *Metro Life Ins. Co. v. Triskett III., Inc.*, 646 N.E.2d 528, 532 (Ohio Ct. App. 1994)). Accordingly, Plaintiff must describe a false representation made by Defendant about the compensation he would receive as a Regional Manager, Defendant's knowledge or utter disregard for the representation's falsity, Defendant's intent to induce his reliance, justifiable reliance in entering into the Regional Manager contract, and injury caused by his entering into the Regional Manager contract. None of these require reference to the Branch Manager contract or Plaintiff's employment relationship with Defendant in that capacity.

Similarly, Plaintiff's breach of contract claim must describe "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citing *Logsdon v. Ohio N. Univ.*, 587 N.E.2d 942, 946 (Ohio Ct. App. 1990)). Accordingly, Plaintiff must describe the existence of the Regional Manager contract, his performance under the Regional Manager contract, Defendant's failure to pay pursuant to the Regional Manager contact, and damage or loss as a result of Defendant's breach. None of these require reference to the Branch Manager contract or Plaintiff's employment relationship with Defendant in that capacity.

Lastly, Plaintiff's unjust enrichment claim must describe "(1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860 (6th Cir. 2002) (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)). Accordingly, Plaintiff must describe a benefit he conferred upon Defendant, such as his services as Regional Manager,

Defendant's knowledge of those services, and Defendant's retention of those services without payment and under unjust circumstances. Again, none of these require reference to the Branch Manager contract or Plaintiff's employment relationship with Defendant in that capacity.

Defendant nonetheless argues that Plaintiff's action cannot be maintained without reference to the Branch Manager contract's provision concerning Plaintiff's "ability to pursue other duties outside the [Branch Manager contract]" because Plaintiff alleges that he forewent other job opportunities to become Branch Manager and Regional Manager. (Brief for Appellant at 17.) However, this allegation appears in the factual background section and does not relate to the stated grounds for relief. *See Dental Assocs., P.C. v. Am. Dental Partners of Mich.*, 520 F. App'x 349, 353 (6th Cir. 2013). While any job opportunities that Plaintiff forewent to become Branch Manager and Regional Manager *may* be relevant to the calculation of Plaintiff's damages if his action succeeds, they are not something that "by necessity must [be] describe[d]." *Fazio*, 340 F.3d at 395.

Defendant also argues that Plaintiff's action cannot be maintained without reference to "the employment relationship between the parties" because "[w]ithout the existence of the [Branch Manager contract], the alleged oral agreement [Plaintiff] claims exists . . . could never have been created." (Brief for Appellant at 18–19.) Defendant provides little explanation of this argument, but we read it as asserting that the Branch Manager contract was an "umbrella agreement" that created the relationship between the parties and governed all future employment agreements between them, making it more likely that Plaintiff's action must reference it. *See Nestle Waters*, 505 F.3d at 505. However, the Branch Manager contract was not an umbrella employment agreement because it was a contract solely to employ Plaintiff in the position of Branch Manager. *Accord Dental Assocs.*, 520 F. App'x at 352. Moreover, "even in cases involving umbrella

agreements, the key question is still whether the [plaintiff's] action can be maintained without reference to the agreement containing the arbitration provision." *Dental Assocs.*, 520 F. App'x at 352. As previously discussed, in this case, it can.

Thus, we hold that Plaintiff's complaint does not fall within the scope of the Branch Manager contract's arbitration provision.

This decision also accords with a survey of the few cases in which we have answered "the question of whether and when an arbitration clause in one contract encompasses a dispute arising out of a related agreement." *Nestle Waters*, 505 F.3d at 499. In *Dental Assocs.*, the parties had entered into three contracts on the same day—an asset purchase agreement, a service agreement, and an employment agreement. 520 F. App'x at 350. While the asset purchase agreement and the employment agreement contained arbitration provisions, the service agreement did not. *Id.* We held that because the scope of the contested obligations was determined by the service agreement, and because the plaintiff's action could be maintained without reference to the other agreements, the district court properly denied the defendant's motion to compel arbitration. *Id.* at 352–53. Similarly, in *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 411 F.3d 669, 670 (6th Cir. 2005), the parties had entered into two contracts on the same day—an insurance policy and a payment agreement. While the payment agreement contained an arbitration provision, the insurance policy did not. *Id.* We held that because the insurance policy "define[d] the parties' substantive rights and duties under the policy," the district court properly denied the defendant's motion to compel arbitration. *Id.* at 671. Thus, the decisions in *Dental Assocs.* and *Alticor* support our decision in this case.

Our decision is also consistent with *Nestle Waters*, on which Defendant heavily relies. In that case, the parties had entered into one contract—a purchase agreement—that required the subsequent execution of a deed to certain subsurface property rights. 505 F.3d at 499. While the purchase agreement contained an arbitration provision, the subsequently executed deed did not. *Id.* at 501. Admitting that it was a "close question," we held that though the action "arose primarily out of the deed" it "could not be [maintained] without reference to the [purchase] agreement." *Id.* at 502–05. We reasoned that the purchase agreement was an "umbrella agreement" that "created the relationship between [the parties]" because it required the subsequent execution of several documents, including the deed, with forms for each "attached to and made a part of the [purchase agreement]." *Id.* at 505. In this case, the Branch Manager contract did not require, attach, make a part of, or refer in any way to the Regional Manager contract. Thus, *Nestle Waters* is distinguishable.

Defendant, perhaps anticipating the above analysis, responds that the presumption in favor of arbitration should nevertheless allow it to prevail. And true enough, "[t]he Federal Arbitration Act requires us to resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *Russell v. Citigroup, Inc.*, 748 F.3d 677, 681 (6th Cir. 2014) (citation omitted). However, this presumption "is not so broad that it compels the arbitration of issues not within the scope of the parties' arbitration agreement." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008). "A longstanding principle of this Circuit is that no matter how strong federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'" *Simon v. Pfizer Inc.*, 398 F.3d 765 (6th Cir. 2005) (citation omitted).

Thus, while Defendant's response "is a fair point . . . in the abstract[,] [i]n the context of this case . . . the arbitration agreement leaves no doubt about its scope." *Russell*, 748 F.3d at 681. Here, the intent of the parties is clear—Plaintiff was and is required to submit to arbitration "all disputes, controversies, and claims . . . arising out of or relating directly or indirectly to *this Agreement*." (RE 5, PageID # 58.) (emphasis added). That agreement is the Branch Manager contract. Because Plaintiff's claims do not arise out of or even relate to the Branch Manager contract, the district court properly denied Defendant's motion to compel arbitration.

## CONCLUSION

For the reasons set forth above, we **AFFIRM**.